IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANCE P. WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-33 Erie |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District Judge.

Plaintiff, Lance P. Wilson ("Plaintiff"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that he was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Plaintiff filed an application for SSI on January 27, 2005, alleging disability since August 1, 1995, due to depression and a left leg injury (Administrative Record, hereinafter "AR", at 50-55).[1]  His application was denied initially, and he requested a hearing before an administrative law judge ("ALJ") (AR 29-34).  A hearing was held on July 31, 2008 and following this hearing, the ALJ found that the Plaintiff was not disabled at any time through the date of her decision, and therefore was not eligible for SSI benefits (AR 13-21; 340-378).  Plaintiff's request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  For the reasons set forth below, the Defendant's motion will be granted and the Plaintiff's motion will be denied.

---

[1] Although the Plaintiff alleged an onset date of August 1, 1995, the relevant period to his disability determination began on January 27, 2005, the date he filed his application for SSI.  See 20 C.F.R. §§ 416.305, 416.335; see also Torres v. Chater, 125 F.3d 166, 171 n.1 (3rd Cir. 1997) (noting that SSI benefits are not payable for a period prior to a claimant's application).

## I. Background[2]

Plaintiff was 38 years old on the date of the ALJ's decision (AR 57). Plaintiff did not finish high school but earned a General Educational Development ("GED") diploma (AR 54; 347). He previously worked as a truck driver/ground person for his father's electrical construction company until his father retired in October 1991 (AR 51).

Prior to his alleged onset date, Plaintiff had surgery in 1986 for a fractured left ankle following a motorcycle accident (AR 149). In May 2000, Plaintiff was seen by David Johe, M.D. for complaints of ankle pain and x-rays revealed significant osteoarthritis of his tibial talar joint (AR 149). On May 26, 2000, Dr. Johe recommended an orthotic and/or brace for his ankle pain, as well as over-the-counter anti-inflammatory medication (AR 149). Dr. Johe noted that the Plaintiff was "disabled" but was of the opinion that he could work at a sedentary or light duty job that did not involve much walking or standing (AR 148-149). He indicated that he would complete the Plaintiff's "forms" stating that the Plaintiff could work with an accommodation that allowed for sitting, and suggested that he undergo vocational rehabilitation (AR148-149). Dr. Johe completed the Pennsylvania Department of Public Welfare Employability Assessment Form, but rather than stating the Plaintiff could work with the suggested accommodation, Dr. Johe opined that the Plaintiff was permanently disabled due to his left ankle condition (AR 151).

On August 31, 2001, Plaintiff was seen in the emergency room for complaints of back pain (AR 154). It was noted that he wore a left foot brace for a left foot drop condition secondary to an old left leg fracture (AR 154).[3] Physical examination revealed no motor or sensory changes and his gait was otherwise unremarkable (AR 154). Multiple views of his lumbar spine were unremarkable and he was assessed with right sciatica, treated with Vicodin and Flexeril and released (AR 153).

On October 22, 2001, Plaintiff was examined by Martin Jacobs, M.D., a consulting

---

[2]Plaintiff does not challenge the ALJ's decision with respect to his alleged mental impairments. Therefore, the Court's discussion will be limited to the evidence relative to the Plaintiff's alleged physical impairments.

[3]"Foot drop" is a "paralysis or weakness of the dorsiflexor muscles of the foot and ankle, resulting in dragging of the foot and toes." *Stedman's Medical Dictionary*, 312 (1995).

examiner (AR 157-161).  Plaintiff reported that he was laid off in 1992 after his father retired (AR 157).  He claimed that he had searched for other work since then but was unable to find a job (AR 157).  He wore a splint on his left calf and ankle which reportedly helped somewhat with the pain (AR 158).  Dr. Jacobs observed surgical scars and a deformity of the external malleolus, and on physical examination, there was no flexion, extension or rotation of the Plaintiff's ankle, even without the brace (AR 158).  His gait was antalgic and his ankle deep tendon reflexes were absent (AR 158).[4]  His remaining physical examination was unremarkable, and he was assessed with secondary degenerative joint disease of the left ankle and low back strain due to his abnormal gait from his abnormal left ankle (AR 158).  On October 30, 2001, a state agency adjudicator concluded that the Plaintiff could perform light work (AR 162-169).

On December 5, 2001, a state agency reviewing physician, Joyce Goldsmith, M.D., reviewed the medical evidence of record and disagreed with the state agency adjudicator's assessment, finding that the medical evidence and treatment records supported a more limited residual functional capacity assessment (AR 170-172).  Dr. Goldsmith found that the Plaintiff could only walk and/or stand at least two hours in an eight-hour day, was precluded from climbing, and could only occasionally balance, stoop, kneel, crouch and crawl (AR 170).  Dr. Goldsmith further found that the Plaintiff was limited in his lower extremities, in that he could not stand or walk for extended periods of time (AR 170).  It was noted that the Plaintiff golfed weekly (AR 172).

In June 2004, while undergoing treatment for depression, Plaintiff reported to Widad Bazzoui, M.D. that he attended a vocational rehabilitation program and they were searching for a job he could perform while sitting (AR 182).  In September 2004, he stated that he helped care for his mother, and in December 2004, he reported to Dr. Bazzoui that he spent a lot of time taking care of his father, performing odd jobs for him in his shop and home (AR 178-179).

Plaintiff returned to Dr. Jacobs for a second disability evaluation on May 14, 2005 (AR 210-217).  Plaintiff again stated that he stopped working in 1992 after his father retired and that he had been unable to find work (AR 210).  Plaintiff reported chronic low back pain, but claimed

---

[4]An antalgic gait is a limb "in which a phase of the gait is shortened on the injured side to alleviate the pain experienced when bearing weight on that side."  *Id*. at 50.

that his frozen left ankle, as well as left ankle and heel pain, were the only symptoms that prevented him from working (AR 211). Dr. Jacobs reported that the Plaintiff's gait was antalgic while wearing his ankle splint and shoes, and "very antalgic" without the splint and shoes (AR 211). Plaintiff's left ankle was swollen and Dr. Jacobs found virtually no active or passive range of motion (AR 211). His remaining physical examination was normal (AR 211). Dr. Jacobs diagnosed the Plaintiff with a frozen left ankle and secondary degenerative joint disease of the left ankle and heel, noting that these conditions caused a gait disturbance necessitating an ankle splint (AR 212).

On June 15, 2005, a state agency reviewing physician reviewed the medical evidence of record and concluded that the Plaintiff could perform light work, but was limited in his ability to push/pull with his legs due to his left ankle impairment; could never climb or crawl; could occasionally balance, stoop, kneel and crouch; and needed to avoid wet surfaces, machinery and heights (AR 219-222).

On October 4, 2005, Plaintiff was seen by Bradley Giannotti, M.D., for his complaints of left ankle pain (AR 284-285). Plaintiff reported that he was only able to stand for approximately one hour before needing to sit for twenty to thirty minutes before resuming activity (AR 284). Plaintiff stated that six years prior he golfed "a couple of times a week" but at the time of the evaluation only golfed once a month (AR 284). Physical examination revealed tenderness throughout the tibiotalar joint line but there was no significant swelling observed (AR 284). His range of motion was significantly restricted, but he was otherwise neurovascularly intact (AR 284). X-rays showed severe post-traumatic tibiotalar and subtalar arthrosis and Dr. Giannotti noted there was some fragmentation of the Plaintiff's talus (AR 284; 287). Dr. Giannotti informed the Plaintiff he could undergo talar fusion surgery or continue using the ankle brace (AR 285). Dr. Giannotti opined that the Plaintiff could perform sedentary work that did not require more than twenty to thirty minutes of walking or standing at a time (AR 285).

Beginning in 2006, the Plaintiff was treated by Peter Vaccaro, M.D. for his complaints of low back pain (AR 254-272). X-rays dated September 22, 2006 revealed mild progressive inferior spondylotic changes in the Plaintiff's lumbar spine with minimal developing hip osteoarthritis (AR 262). An MRI of the Plaintiff's lumbar spine dated September 28, 2006

showed a small protrusion at L5-S1, disc bulges at L3-4 and L4-5 and degenerative joint disease (AR 261).

Plaintiff was referred to a pain clinic for his low back pain and was evaluated by William McCain, M.D. on September 29, 2006 (AR 281). Physical examination of the Plaintiff's back revealed some tenderness on palpation, but was otherwise normal (AR 281). Dr. McCain reported that Plaintiff walked with only a slight gait and could not plantar flex while wearing his splint (AR 281). Dr. McCain recommended that the Plaintiff undergo a series of lumbar epidural injections, but the Plaintiff declined this treatment until he could consult with family members (AR 281).

Plaintiff returned to Dr. Giannotti on July 3, 2007, who noted it had been approximately one and one half years since his last visit (AR 285). Plaintiff reported increased weightbearing difficulties and that he had "good days and bad days" (AR 285). X-rays revealed no substantial change from his last visit (AR 286). Dr. Giannotti again presented the option of talar fusion, but pointed out the risk that surgery would diminish ankle motion and potentially lead to future arthrosis of the distal joints (AR 283). Plaintiff declined surgical intervention and was to return on an as needed basis (AR 283).

Approximately one year after his initial visit with Dr. McCain, the Plaintiff underwent an epidural steroid injection on September 13, 2007 for his complaints of back pain (AR 280). He subsequently had a series of injections in September, October and November of 2007 which reportedly "greatly improved" his pain (AR 276-277; 279). He was also prescribed a TENS unit which "work[ed] well" for him (AR 276).

Plaintiff returned to Dr. McCain on January 2, 2008 and reported that the series of epidural injections in 2007 had improved his back pain and the Flexeril also helped relieve the pain (AR 276). He received additional injections in February, March and April 2008 and reported that the series had helped him "tremendously" (AR 274-275; 328).

On January 14, 2008 the Plaintiff reported to his psychiatrist, Dr. Bazzoui, that he was keeping busy helping his father with "minor things" that he could handle (AR 320). On July 8, 2008 Plaintiff reported that he was cutting the grass and running errands for his father (AR 321).

On August 7, 2008, Dr. Giannnotti stated in a letter that the Plaintiff had a "talar dome

fracture unhealed fragment" which, in combination with his previous distal tibia and fubula fractures, led to extensive tibiotalar and subtalar arthritis (AR 337).

Plaintiff and P. Manzi, a vocational expert, testified at the hearing held by the ALJ on July 31, 2008 (AR 340-378). Plaintiff testified that he lived alone and drove to his parents house daily (AR 346-347). He indicated that he stopped working in 1992 when his father retired and had not looked for a job since 1996 (AR 347). Plaintiff testified that he typically arose between 10:00 a.m. and noon, took his medication and then drove eight miles to his parents home (AR 348-349). There, he fed their cats, had lunch and dinner, and then returned to his own home and watched television (AR 349). He claimed he performed no household chores and testified that a friend did his laundry at her house (AR 349-351). Plaintiff claimed that he stopped golfing in the Summer of 2004 because of an alleged inability to walk from the golf cart to the green (AR 350-351; 363). He testified that had not performed any "odd" jobs in five years and had not taken any trips (AR 350-351). While he claimed that he did not socialize with others, he also testified that he ate dinner at a friend's house approximately three to four times per week (AR 352).

Plaintiff testified that he could walk for 50 feet, stand for ten minutes, bend at the waist, lift ten pounds, use his hands and arms to push and pull, reach overhead and climb one stair at a time (AR 352-354). He could not, however, kneel, stoop or bend, and could only sit for approximately fifteen minutes (AR 353-354). He claimed his ankle became swollen requiring elevation after that time frame (AR 366). Plaintiff stated he was unable to work due to ankle pain and stiffness, rating his pain as a seven out of ten (AR 354-355). He wore an ankle brace and declined to undergo surgery due to possible complications (AR 355). He sat in a hot shower and took extra strength Tylenol in an effort to alleviate the pain (AR 355). Plaintiff further testified to an inability to work due to back pain (AR 356). He claimed he suffered from muscle spasms approximately every other day (AR 360). Plaintiff indicated that he took Flexeril and wore a back brace, which provided some relief (AR 357-358).

The ALJ asked the vocational expert if jobs were available for an individual of the same age and education as the Plaintiff, who, *inter alia*, needed to change positions every thirty minutes (370). The vocational expert testified that such an individual could perform the light jobs of a collator operator and laundry sorter, and the sedentary jobs of a charge account clerk,

addresser, surveillance system monitor and general assembler (AR 370-374).

Following the hearing, the ALJ issued a written decision finding that the Plaintiff was not eligible for SSI benefits within the meaning of the Social Security Act (AR 13-21). His request for review by the Appeals Council was denied, rendering the ALJ's decision the final decision of the Commissioner (AR 5-8). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.  The ALJ resolved Plaintiff's case at the fifth step.  At step two, the ALJ determined that his ankle disorder, degenerative disc disease and obesity were severe impairments, but determined at step three that he did not meet a listing (AR 15).  At step four, the ALJ determined that he retained the residual functional capacity to perform a full range of sedentary work and some light work requiring no more than twenty to thirty minutes of walking and standing at one time (AR 15).  At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 21).  The ALJ additionally determined that his complaints of pain and limitations were not credible to the extent alleged "given his inconsistent statements, the objective evidence, the nature and extent of treatment he [had] sought and received and the treatment notes" (AR 20).  The ALJ further found that his credibility was undermined based on his poor work record (AR 20).  Again, I must affirm this determination unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Plaintiff first challenges the ALJ's findings at step three of the sequential evaluation process.  Step three requires a determination of whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1.  *See* 20 C.F.R. § 416.920(d).  A claimant who meets or medically equals all of the criteria of an impairment listed in Appendix 1 is *per se* disabled and no further analysis is necessary.  *Burnett v. Commissioner*, 220 F.3d 112, 119 (3rd Cir. 2000).  A claimant bears the burden of proving that his impairments meet or equal a listed impairment.  *See Adorno v. Shalala,* 40 F.3d 43, 46 (3rd Cir. 1994).  Plaintiff argues that substantial evidence supports the conclusion that he met Listing 1.03 and/or Listing 1.06 and that the ALJ erred in concluding otherwise.

Listing 1.03 describes an impairment resulting from "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with *inability to ambulate effectively*, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."  20 C.F.R.  Pt. 404, Subpt. P, App. 1, § 1.03 (emphasis added).  Listing 1.06 provides:

> 1.06 *Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones.* With:
> A.  Solid union not evident on appropriate medically acceptable imaging and not clinically solid;
> and
> B.  *Inability to ambulate effectively*, as defined in 1.00B2b,

> and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.06 (emphasis added to section B).

Principally, the Commissioner argues that substantial evidence supports the ALJ's conclusion that the Plaintiff did not suffer from an "inability to ambulate effectively" and, therefore, the ALJ did not err in failing to find that he did not meet either Listing. An inability to ambulate effectively is defined in the Regulations as:

> (1) [A]n extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. ...
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b.

Although the record reflects that the Plaintiff continues to suffer from ankle problems, substantial evidence supports the conclusion that he does not suffer from an "inability to ambulate effectively." The medical records indicate that while being treated for complaints of low back pain in August 2001, it was noted that the Plaintiff wore a left foot brace but his gait was otherwise unremarkable (AR 154). Dr. Jacobs, the consulting examiner, noted the Plaintiff's gait was "very antalgic" without his ankle splint and shoes but merely antalgic when wearing the splint, and he never indicated that the Plaintiff had an inability to ambulate effectively (AR 211). Plaintiff's orthopedic surgeon, Dr. Giannotti, opined in October 2005 that the Plaintiff was capable of performing sedentary work, including walking and/or standing for twenty to thirty

minutes at a time (AR 19-20; 285). During his evaluation for low back pain in September 2006, Dr. McCain found no significant problems with his gait (AR 281).

In addition, the ALJ noted that the Plaintiff reported that he lived alone and was able to care for his personal needs on a daily basis (AR 16-17; 63-64). The ALJ further noted that the Plaintiff reported to his treating psychiatrist in September 2004 that he helped care for his mother, and in December 2004, he was performing "odd jobs" for his father in his shop and home (AR 18; 178-179). The ALJ observed that the Plaintiff informed Dr. Giannotti in October 2005 that he previously golfed "a couple of times a week" but at the time of the evaluation golfed once per month (AR 17; 284). The ALJ noted that in January 2008 he reportedly was cutting the grass and running errands for his father (AR 18; 321).

Plaintiff claims, however, that the ALJ erred in rejecting his testimony that he could not walk for more than 50 feet. *See* Plaintiff's Brief p. 12. However, the ALJ found the Plaintiff's testimony with respect to his claimed limitations were not credible to the extent alleged (AR 20). The ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record, *see Baerga v. Richardson,* 500 F.2d 309, 312 (3rd Cir. 1974), and explains his basis for doing so. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F2d 871, 873 (3rd Cir. 1983). Here, the ALJ made the following observations as to the Plaintiff's credibility as it relates to his ability to ambulate:

> With regard to the claimant's ankle disorder, the record establishes that the claimant has a significant impairment of extensive arthritis in his ankle. Clearly, this limits his ability to stand and walk. I do not credit the claimant that he has a medical necessity to elevate his ankle. The record does not reflect this. Further, I do not credit the claimant's contentions that he can only walk 50 feet and sit for 15 minutes for the past four years; the record reflects much greater functioning, including the claimant cutting his father's lawn just before the hearing. The claimant's treating specialist wrote that the claimant can stand and walk for 20 to 30 minutes at a time. I accept this evaluation as it is consistent with the objective evidence and the record as a whole. ...

(AR 20). All of these findings are supported by the record and I find that the ALJ's conclusions in this regard are entitled to deference.

I reject the Plaintiff's contention that the ALJ had a duty to re-contact Dr. Giannotti to ascertain "what he meant" when he opined that the Plaintiff could perform sedentary work. *See* Plaintiff's Brief p. 14.  The Commissioner's Regulations provide that a medical source will be re-contacted and additional medical information will be obtained "when the report ... contains a conflict or ambiguity that must be resolved, the report does not appear to contain all the necessary information, or does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1).  However, an "important prerequisite" for re-contacting a source is if "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled." *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 205 (3rd Cir. 2008) (quoting 20 C.F.R. § 416.912(e)(1)).  Here, there was sufficient evidence to support the ALJ's decision without further record development.

      Finally, the Plaintiff argues that even in the absence of meeting a Listing, his impairments are such that he is precluded him from performing full-time, sustained work activities as required by Social Security Ruling ("*SSR*") 96-8p.  *See* Plaintiff's Brief p. 14.  In order to show that a claimant is in fact capable of undertaking jobs that exist in the national economy, the Commissioner must prove that the claimant retains the residual functional capacity ("RFC") to work on a "regular and continuing basis." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 60 (3rd Cir. 1988) (quoting *Kangas v. Bowen*, 823 F.2d 775, 777 (3rd Cir. 1987) (citing 20 C.F.R. § 404.1545(b))).  Social Security Ruling 96-8p, 1996 WL 374184, defines "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent schedule." *SSR* 96-8p, 1996 WL 374184 at *2.

      The ALJ concluded that the Plaintiff retained the RFC to perform the full range of sedentary work and some light work, with no more than twenty to thirty minutes of walking and standing at a time (AR 15).  The ALJ acknowledged that the Plaintiff's ankle impairment "clearly" limited his ability to stand and walk, but rejected the Plaintiff's claim of a complete inability to work based on his own treating orthopedic physician's opinion with respect to his RFC, as well as his daily activities (AR 20).  The ALJ further found that the Plaintiff's back condition and obesity did not place any greater limitations than the assessed RFC (AR 20).  She

noted that the Plaintiff's back pain was managed with medication and treatment and he had not sought or received any significant treatment for his obesity (AR 20). Substantial evidence supports the ALJ's findings in this regard.

## IV. Conclusion

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LANCE P. WILSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 09-33 Erie |

**ORDER**

AND NOW, this 5th day of May, 2010, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 8] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 10] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Lance P. Wilson.

The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record.